IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Brief July 20, 2004

## IN THE MATTER OF: S.R.C.

**Direct Appeal from the Juvenile Court for Gibson County**
**No. JC-17,952      Larry Logan, Judge**

_____

**No. W2004-00238-COA-R3-PT - Filed August 16, 2004**

_____

The trial court terminated Mother's parental rights. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Jason C. Scott, Trenton, Tennessee, for the Appellant, M.C.

Paul G. Summers, Attorney General and Reporter, and Juan G. Villasenor, Assistant Attorney General, for the Appellee, State of Tennessee, Department of Children's Services.

**OPINION**

This is a termination of parental rights case. In May 2003, the Department of Children's Services ("DCS") filed a petition in Gibson County Juvenile Court to terminate the parental rights of M.C. ("Mother") to S.R.C., born May 16, 2001. In its petition, DCS also named as respondents alleged fathers S.C.S. and S.D.W. The trial court dismissed S.D.W. upon motion of DCS, and S.C.S. entered a waiver of interest in the matter. Thus, Mother was the sole respondent before the trial court when it heard this matter.

The pertinent facts of this case are undisputed. Mother suffers from paranoid schizophrenia and bipolar disorder and is "polysubstance" dependant. In addition to abusing drugs, Mother experiences auditory and visual hallucinations. Mother was incarcerated for public intoxication from September 5, 2001, until November 16, 2001. In March 2002, Mother left S.R.C. in the care of Mother's sister. DCS removed S.R.C. from Mother's sister after it determined that Mother's sister had ingested Xanax and alcohol and was unfit to care for S.R.C. In April 2002, mother entered into a permanency plan which included providing child care, securing a stable home, securing financial stability through employment or public assistance, refraining from drug use, seeking drug counseling, and complying with treatment recommendations for bipolar disorder. Mother continued

to abuse drugs, however, and was incarcerated on several occasions, during which S.R.C. was left with unfit care-givers.

The trial court awarded DCS temporary custody of S.R.C. in June 2002, after finding S.R.C. to be dependent and neglected and that removal was in S.R.C.'s best interest. In November 2002, Mother was admitted to a halfway house to await admission to a drug treatment facility. She refused to take a drug test, however, and consequently became ineligible to remain at the facility.

In May 2003, DCS filed a petition to terminate Mother's parental rights and the trial court heard the matter in October 2003. At the time of trial, Mother was incarcerated. Debra Davenport (Ms. Davenport), a senior psychological examiner who had evaluated Mother, testified that, in light of Mother's mental illness and anti-social traits, it would take several years, if ever, before Mother could provide a stable environment for S.R.C. Ms. Davenport also testified that Mother had not complied with medical treatment. The trial court also heard the testimony of Patti Cunningham (Ms. Cunningham), a DCS case manager, who testified that Mother had made no progress on the permanency plan and that Mother continued to abuse drugs and alcohol. The trial court found Mother had not complied with the permanency plan, that Mother is incompetent to provide care for S.R.C., and that termination of Mother's parental rights is in the best interest of S.R.C. The trial court entered its final order terminating Mother's parental rights on January 5, 2004, and Mother filed a timely notice of appeal to this Court.

### Issues Presented

Mother raises the following issues, as we slightly restate them, for review by this Court:

(1)     Whether DCS failed to prove by clear and convincing evidence that termination of parental rights was in the best interest of S.R.C.;

(2)     Whether DCS failed to prove by clear and convincing evidence that it used reasonable efforts to reunify the mother and child;

(3)     Whether DCS failed to prove by clear and convincing evidence that Mother had failed to comply with the permanency plan where Mother's dual diagnosis made compliance impossible.

### Standard of Review

We review the determinations of a trial court sitting without a jury *de novo* upon the record. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). We presume the trial court's findings of fact to be correct, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). However, no presumption of correctness attaches to a trial court's conclusions on issues of law. *Bowden v. Ward*, 275 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d).

Tennessee Code Annotated § 36-1-113 governs the termination of parental rights. The code provides, in pertinent part:

> (c) Termination of parental or guardianship rights must be based upon:
> (1) A finding by the court by clear and convincing evidence that the grounds for termination or parental or guardianship rights have been established; and
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c)(2001). This section also provides the grounds on which parental rights may be terminated. The existence of any statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W., N.W.W., Z.W.W., & A.L.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000).

A court's determination to terminate parental rights must be supported by clear and convincing evidence. *Id.* at 474. The "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard, although it does not demand the certainty required by the "beyond a reasonable doubt" standard. *Id.* To be clear and convincing, the evidence must eliminate any substantial doubt and produce in the fact-finder's mind a firm conviction as to the truth. *Id.* Insofar as the trial court's determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *See Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

### *Analysis*

The Tennessee Code provides, in pertinent part:

> Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;
> (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;
> (3)(A)The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (I) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn. Code Ann. 36-1-113(g)(1)-(3)(A)(2001).

The trial court specifically did not find willful abandonment or wanton disregard for the child on the part of Mother. The trial court's final order is somewhat contradictory, however, regarding the persistence of conditions leading to the removal of S.R.C. from Mother's care. Although the trial court stated it did not find "persistence of conditions," the trial court also stated, "[t]he Court does find that the child was placed as a dependent and neglected child in foster care and there has been a total failure by [Mother] and no reasonable efforts by her to remedy the situation and it is unlikely she will be able to provide a suitable home."

Upon review of the entire record in this case, we find overwhelmingly clear and convincing evidence of grounds for termination of Mother's parental rights under section 36-1-113(g)(3)(A). As the trial court noted, Mother entered into two permanency plans in this matter, one in March 2003, and one in December 2003. She had nineteen months to comply with the plans and, although she was incarcerated for some of that time, she had a substantial amount of time during which she was not incarcerated and did little, if anything, to remedy her situation. She continued to abuse drugs and, at the time of trial, remained mentally incompetent to provide care and supervision for S.R.C.

Although we are not insensitive to Mother's mental illness, the record reflects little effort by Mother to address her illness or to end her "polysubstance" dependency. Mother has not complied with any requirements of the permanency plans. S.R.C. has been in DCS custody for well over six months under a finding of dependency and neglect and the conditions leading to removal of the child clearly persist. It is unlikely that Mother will be able to provide a suitable home for S.R.C. in the near future.

Additionally, we agree with DCS that clear and convincing evidence establishes grounds for termination of Mother's parental rights under section 36-1-113(g)(8), which provides:

(B) The court may terminate the parental or guardianship rights of that person if it determines on the basis of clear and convincing evidence that:
(I) The parent or guardian of the child is incompetent to adequately provide for the further care and supervision of the child because the parent's or guardian's mental condition is presently so impaired and is so likely to remain so that it is unlikely that the parent or guardian will be able to assume or resume the care of and responsibility for the child in the near future, and
(ii) That termination of parental or guardian rights is in the best interest of the child.

Tenn. Code Ann. § 36-1-113(g)(8)(B)(2001). Termination of parental rights under this section does not require a showing of willfulness on the part of the parent. Tenn. Code Ann. § 36-1-113(8)(C)(2001). Not only does the record support termination based on this section, but, in her brief to this Court, Mother asserts that her mental health condition makes long-term drug rehabilitation a "near impossibility."

We also agree with the trial court that clear and convincing evidence establishes that termination of Mother's parental rights is in the best interest of the child under section 36-1-113(I).[1] S.R.C. has no meaningful relationship with Mother, and Mother cannot care for S.R.C. Mother cannot provide a safe, healthy home for S.R.C.; she cannot care for or supervise S.R.C.; Mother's continued drug abuse and mental/emotional condition are likely to be detrimental to S.R.C. and make it unlikely that Mother will be able to care for S.R.C. in the near future, if ever. S.R.C. is in a safe and stable foster home, however, with a family that intends to adopt the child. Termination of Mother's parental rights clearly is in S.R.C.'s best interest.

---

[1]The Tennessee Code provides:

(I) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5- 101.

Tenn. Code Ann. § 36-1-113(I)(2001).

***Holding***

In light of the foregoing, we affirm the judgment of the trial court. Costs of this appeal are taxed to Mother, M.C., and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE