# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 31, 2013

## In re: Trevor M. K. W.

### Direct Appeal from the Juvenile Court for McNairy County
### No. 10JV14     Van McMahan, Judge

### No. W2013-00299-COA-R3-PT - Filed September 18, 2013

The juvenile court terminated Father's parental rights to Son on the grounds of abandonment and persistence of conditions, and upon its finding that termination is in Son's best interest. We affirm the termination of Father's parental rights to Son.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Ross Mitchell, Selmer, Tennessee, for the appellant, Timothy L. Wells

Carma Dennis McGee, Savannah, Tennessee, for the appellees, Jason Darryl Young and wife, Felecia Lynn Young

Melissa G. Stewart, Selmer, TN, for the Guardian Ad Litem

## OPINION

### I. FACTS & PROCEDURAL HISTORY

This case involves the termination of the parental rights of Timothy L. Wells ("Father") to his minor son ("Son"), born July 7, 2009.[1] In March 2010, Son was placed in the custody of Petitioners Felicia Lynn Young and Jason Darryl Young, the sister and brother-in-law of Son's mother. Following a hearing in May 2010, Son was adjudicated dependent and neglected in a July 2010 Order.[2]

On June 21, 2012, Petitioners filed a Petition for Termination of Parental Rights seeking to terminate Father's parental rights to Son.[3] A trial was held on October 23, 2012, in the McNairy County Juvenile Court. On November 26, 2012, the juvenile court entered an order terminating Father's parental rights due to abandonment for willful failure to visit and willful failure to support, and due to persistence of conditions. The juvenile court further found that termination was in Son's best interest. Father appeals.

### II. ISSUES PRESENTED

Father presents the following issues for review, as restated:

1. Whether the trial court erred in finding grounds for termination; and

2. Whether the trial court erred in finding that termination is in Son's best interest.

For the following reasons, we affirm the termination of Father's parental rights to Son.

---

[1] According to Petitioners' appellate brief, Father has been found to be the legal father of Son by Order of the McNairy County Juvenile Court

[2] Father stipulated that Son was dependent and neglected due to Father's incarceration. Mother also stipulated that Son was dependent and neglected.

[3] The Petition also sought to terminate the parental rights of Son's mother, Farrah Renee Frazier. However, the Order of Termination of Parental Rights states that "[b]y agreement of counsel, only the Petition against the Respondent Timothy L. Wells is being heard on this date. A hearing in regard to the parental rights of Respondent Farrah Renee Frazier will be scheduled at a later time." The Order terminating Father's parental rights was made final pursuant to an Amended Order of Termination of Parental Rights entered on April 29, 2013.

### III. STANDARD OF REVIEW

"A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the Due Process Clause of the federal and state constitutions." *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007); *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005). Although the parent's right is fundamental and superior to the claims of other persons and the government, it is not absolute. *In re J.C.D.*, 254 S.W.3d at 437. A parent's right "continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *Id.*; *see also In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In Tennessee, proceedings to terminate a parent's parental rights are governed by statute. "Parties who have standing to seek the termination of a biological parent's parental rights must prove two things." *In re Audrey S.*, 182 S.W.3d at 860; *see also In re M.J.B.*, 140 S.W.3d at 653. First, they must prove the existence of at least one of the statutory grounds for termination, which are listed in Tennessee Code Annotated section 36-1-113(g). *Id.* Several grounds for termination are listed in subsection (g), but the existence of any one of the grounds enumerated in the statute will support a decision to terminate parental rights. *In re S.R.C.*, 156 S.W.3d 26, 28 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). Second, the petitioner must prove that terminating parental rights is in the child's best interest, considering, among other things, the factors listed in Tennessee Code Annotated section 36-1-113(i). *In re Audrey S.*, 182 S.W.3d at 860. Because no civil action carries graver consequences than a petition to sever family ties forever, both of the elements for termination must be proven by clear and convincing evidence. *Id.* at 860-61. In sum, "[t]o terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006) (citing *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). Clear and convincing evidence has been defined as evidence that "eliminates any serious or substantial doubt concerning the correctness of the conclusion to be drawn from the evidence." *In re L.J.C.*, 124 S.W.3d 609, 619 (Tenn. Ct. App. 2003) (quoting *In the Matter of: C.D.B., S.S.B., & S.E.B.*, 37 S.W.3d 925, 927 (Tenn. Ct. App. 2000)). It produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Audrey S.*, 182 S.W.3d at 861.

Because of this heightened burden of proof in parental termination cases, on appeal we must adapt our customary standard of review as set forth in Tennessee Rule of Appellate Procedure 13(d). *In re Audrey S.*, 182 S.W.3d at 861. First, we review each of the trial court's specific factual findings *de novo* in accordance with Rule 13(d), presuming the

finding to be correct unless the evidence preponderates against it. *Id.* Second, we must determine whether the facts (either as found by the trial court or as supported by the preponderance of the evidence) clearly and convincingly establish the elements required to terminate parental rights. *Id.* Whether a statutory ground has been proven by the requisite standard of evidence is a question of law to be reviewed *de novo* with no presumption of correctness. *In re R.L.F.*, 278 S.W.3d 305, 312 (Tenn. Ct. App. 2008) (citing *In re B.T.*, No. M2007-01607-COA-R3-PT, 2008 WL 276012, at *2 (Tenn. Ct. App. Jan. 31, 2008)).

## IV. DISCUSSION

### A. Grounds for Termination

#### 1. Abandonment

The first ground for termination listed in the statute, and the one most frequently relied upon, is abandonment. *In re Audrey S.*, 182 S.W.3d at 862. For purposes of terminating parental rights, there are five alternative definitions of abandonment listed in Tennessee Code Annotated section 36-1-102(1)(A)(i)-(v). The definition relevant in this case defines "abandonment" as where:

> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Abandonment can be established by showing that a parent either willfully failed to visit or willfully failed to provide support. *See In re Audrey S.*, 182 S.W.3d at 863 ("In the statutes governing the termination of parental rights . . . . [w]illful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent.") (citations omitted). "Failure to visit or support a child is 'willful' when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *Id.* at 864 (footnote and citations omitted). These failures must have occurred in the four months immediately preceding the filing of the termination petition currently before the court. **Tenn. Code Ann. 36-1-102(1)(A)(i),(ii)**; *see also In re D.L.B.*, 118 S.W.3d 360, 366 (Tenn. 2003). The termination petition in this case was filed on June 21, 2012; therefore, the relevant period is February 21 to June 21, 2012.

a. Failure to Visit

Father acknowledges that he exercised no visitation with Son during the relevant four-month period. In fact, it is undisputed that Father lasted visited Son in early to mid-2011.[4] However, on appeal, Father contends that his failure to visit was not willful.

At some point in 2011, Petitioner Felicia Young obtained an order of protection against Father requiring that he remain a certain distance from her after Father made frequent visits to her place of employment. Additionally, in April 2011, the Child Protective Investigate Team ("CPIT") "indicated" Father as the alleged perpetrator in a sexual molestation matter involving a teenage girl. Father was not criminally prosecuted, but the Carl Perkins Center, where Father had exercised supervised visitation with Son, no longer allowed Father on its premises, and, therefore, Father's visitation rights were suspended due to lack of a suitable supervisor. In a July 2011 Order on Review, the juvenile court noted that "there is no one available to supervise the visits between the father and the son[,]" and it reset the matter for a hearing on visitation. In an August 2011 Order on Review, the juvenile court ordered that "father's visits with the child shall remain suspended pending further orders of the Court." There is no indication that suitable supervision was found such that Father's visitation could resume.

Father claims that "in light of the restraints against him," his failure to visit cannot be classified as "willful." We disagree.

First, Petitioner Felicia Young testified that the restraining order only limited Father's proximity *to her*, and that it did not prohibit Father from exercising visitation with Son. In fact, Mrs. Young believed that Father had visited Son *after* the protective order was entered. Mrs. Young testified that she never did anything to impede Father's visitation with Son, and Father acknowledged that Mrs. Young was not the contact person for arranging visits with Son.

Similarly, the order suspending Father's visitation rights does not preclude a finding that Father willfully failed to visit Son. Recently, in *In re Adoption of Angela E.*, --- S.W.3d ----, 2013 WL 960626, at *5 (Tenn. 2013), our Supreme Court found that a father had willfully failed to visit his child despite a court order suspending visitation. The Court noted that the father had filed a petition to reinstate visitation, but that he had taken no action to advance the petition. *Id.* The Court stated that Father had offered no reasonable excuse for failing to pursue the petition, and it found that he simply "was [not] actively trying to

---

[4]Father testified that he had not visited Son since March 2011, but Petitioner Felicia Young testified that Father had some type of contact with Son in July 2011.

maintain visitation." *Id.* Such is the case here. Petitioner Jason Young testified that Father sent Son a birthday card in July of 2011, but that since that time, Father had not in any way attempted to contact Son or arrange visitation with him. The record provides no indication that Father filed any pleadings in the trial court to reinstate his visitation rights or to appeal the suspension thereof.[5] Simply put, we find no evidence that Father has exerted any efforts to maintain visitation with Son nor have we discovered a sufficient explanation for his failure to do so. We affirm the juvenile court's finding that Father abandoned Son under Tennessee Code Annotated section 36-1-102(1)(A)(i) for willfully failing to visit.

### b. Failure to Support

As stated above, "abandonment" includes situations where a parent has "willfully failed to visit" or has "willfully failed to make reasonable payments toward the support of the child." **Tenn. Code Ann. § 36-1-102(1)(A)(i)**. "[W]illfully failed to support" or "willfully failed to make reasonable payments toward such child's support" is defined as "the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments[6] toward the support of the child[.]" **Tenn. Code Ann. § 36-1-102(1)(D)**.

In July 2011, Father was ordered to pay $308.00 per month in child support. However, at the trial in this matter, Father acknowledged that he had not paid child support since November 2011. The portion of Father's appellate brief regarding abandonment is devoted, almost entirely, to failure to visit. With regard to failure to provide support, Father's brief states only, "[Father] argues that he was effectively restrained from visiting his child due to the no-contact order with regard to Ms. Young, and therefore, Mr. Wells did not willfully fail to visit *or support* his child." (emphasis added). Insofar as Father attempts to argue that his child support obligation terminated when he ceased visiting with Son, this argument is without merit. "The parental duty of visitation is separate and distinct from the parental duty of support. Thus, attempts by others to frustrate or impede a parent's visitation

---

[5]In his appellate brief, Father states that "[Father's] testimony clearly indicates that he made attempts through his attorney to seek appropriate relief from the court to visit his child[,]" and that he "made numerous attempts to seek appropriate relief from the court, but was prevented due to the no-contact order and the CPIT team indication." The citations offered in support of these arguments primarily relate to Father's voluntary cessation of child support due to the suspension of his visitation. Regarding his purported attempts to reinstate visitation, the citations offered indicate only that Father testified that he did not pay child support "[b]ecause [his] attorney advised [him] he was going to try to get back in Court for [him] to get visitation back[.]" There is, however, no indication that any action was ever taken.

[6]"Token support" under the statute "means that the support, under the circumstances of the individual case, is insignificant given the parent's means." **Tenn. Code Ann. § 36-1-102(1)(B)**.

do not provide justification for the parent's failure to support the child financially." ***In re Audrey S.***, 182 S.W.3d at 864 (citations omitted). Moreover, the record does not support any implicit assertion that Father believed his support duty terminated when his visitation ceased. Rather, the record reveals that Father continued to pay support until November 2011–many months after visitation ceased–and his own testimony indicates that he voluntarily stopped making support payments, in part, because Son's mother was not paying child support. Again, Father does not assert that he lacked the ability to support Son, and the record demonstrates that Father was aware of his duty to support and that he failed to fulfill such obligation without justifiable excuse. We affirm the juvenile court's finding that Father abandoned Son under Tennessee Code Annotated section 36-1-102(1)(A)(i) for willfully failing to support or to make reasonable payments toward support.

## 2. Persistent Conditions

In addition to abandonment, the juvenile court found that Petitioners had established by clear and convincing evidence the ground for termination commonly referred to as "persistent conditions" which is set forth in Tennessee Code Annotated section 36-1-113(g)(3)(A)-©:

> (3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> > (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> > (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> > (C) The continuation of the parent or guardian and child relationship greatly diminished the child's chances of early integration into a safe, stable and permanent home[.]

In finding that the conditions which led to Son's removal–incarceration and anger issues–persisted, the juvenile court noted Father's frequent and continued periods of incarceration as well as his lingering inability to control his anger. In his appellate brief, Father argues that the trial court erred in finding persistent conditions because he testified that he had attended anger management classes since 1997 and because "it is clear that much of [his] anger noted by the counselors . . . was directed toward [Son's mother], and not the minor child." Father also argues that the evidence presented failed to demonstrate that the

conditions "in all reasonable probability" would subject Son to further abuse or neglect. ***See*** **Tenn. Code Ann. § 36-1-113(g)(3)(A)**.

First, we reject Father's argument that a finding of probable abuse or neglect was necessary. The statute simply provides that the relevant "conditions" for consideration may be *either* those which led to the child's removal or "other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s)[.]" Where, as here, the persistent conditions are those which led to the child's removal, "other conditions," and their likelihood to subject the child to harm, need not be considered.

We likewise reject Father's argument that his attendance at anger management classes and his purported lack of anger directed at Son is sufficient to preclude a finding of persistent conditions. Instead, the evidence presented at trial overwhelmingly demonstrated that the conditions which led to Son's removal continue to persist and are unlikely to be remedied quickly so that he can be returned to Father's care.

At the time the dependency and neglect petition was filed in March 2010, as well as at the hearing on the petition in May 2010, Father was incarcerated, serving a ninety-day sentence for domestic violence against Son's mother. Throughout the proceedings in his matter, Father has incurred several criminal charges and has been incarcerated numerous times. In April 2011, Father pled guilty to simple assault and was sentenced to twenty-days incarceration. He again pled guilty to simple assault in September 2011 and was sentenced to sixteen-days incarceration, sixty-eight hours of domestic abuse counseling, and active probation. Father pled guilty to disorderly conduct in January 2012 and was sentenced to fourteen-days incarceration, active probation, and alcohol/drug evaluation and counseling. A few weeks later, Father was arrested again for public intoxication and unlawful possession of an inhalant, but the case had not yet been resolved at the time of the termination hearing. Father was arrested yet again in February 2012 for felony failure to appear,[7] and in April 2012 for inhaling/possessing glue/gas/aerosol, but the April 2012 charges had not yet been resolved at the time of the termination hearing. In October 2012, Father was indicted for six counts of aggravated assault, two counts of inhaling toxic fumes, and felony failure to appear, although, like other charges, at the time of the termination hearing, those charges had apparently not yet been adjudicated. Father was incarcerated when the October 23, 2012 termination hearing was held.

---

[7]Father testified that the State dismissed the charge against him, but the grand jury "picked them back up for some reason[.]"

At trial, Father testified that he had been attending anger management counseling "off and on" for fifteen years, and that the counseling had "help[ed] out a lot." However, the reports of his anger management counselor indicate otherwise. For example, an October 27, 2010 Case Note Report states:

> It is obvious that over the course of thirty years of anger management treatment among other mental health services, [Father] has been unable to retain the skills necessary to adequately function within the community. There is no way that this counselor could ever recommend that [Father] have unsupervised visits with [Son]. [Father] is concerned with seeking vengeance on the child's mother, and the child would not be safe if left alone with [Father]. This counselor would have expected to see somewhat of an improvement in [Father] since the last time that they met in May, yet no improvement in his emotional stability or level of function can be noted. Due to his inability to function, lack of anger control, unstable and volatile interpersonal relationships, lack of parenting skills, and severe emotional disturbance, it is evident that [Father] would not be a suitable placement for [Son].

Father's numerous arrests and/or convictions for domestic violence and assault during the pendency of this case clearly indicate that Father's anger issues have not been resolved. That Father's anger may be directed at Son's mother, rather than at Son, himself, is of no consequence. In sum, the evidence clearly and convincingly established that the conditions which led to Son's removal continue to persist and are unlikely to be remedied quickly so that he can be returned to Father's care. Therefore, we affirm the juvenile court's finding of persistent conditions as set forth in Tennessee Code Annotated section 36-1-113(g)(3)(A)-(C).

### B. Best Interest of the Child

Once a ground for termination is established by clear and convincing evidence, we must consider whether termination of parental rights is in the child's best interest. In evaluating the child's best interest, we are to consider numerous factors including, but not limited to, those set forth in Tennessee Code Annotated section 36-1-113(I):

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment

after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parents or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

On appeal, Father contends that the trial court wholly failed to consider the above-cited factors in making its best interest determination. While the juvenile court did not explicitly state that it had considered the statutory factors, the court's findings and recitation of the evidence in its Order of Termination of Parental Rights indicate that it considered such factors. For example, the court found that Father had not completed the requirements set forth in the Adjudicatory and Dispositional Hearing Order to cooperate and maintain contact with the Department of Children's Services, that Father had not paid child support despite his ability to do so, that Father had failed to maintain contact with Son, that Father had continued to incur criminal charges, and that Father's anger management problem persisted.

Moreover, based upon our own review of the evidence, in light of these factors, we conclude that termination of Father's parental rights is in the best interest of Son. Again, Father has paid no child support since November 2011, and he has been in and out of jail during the two-year pendency of these proceedings. Aside from being unable to parent while he is incarcerated, Father's charges and convictions relate to drugs and anger issues, indicating that criminal activity is likely to take place in Father's home and demonstrating that Father is mentally and/or emotionally unstable such that he cannot appropriately care for Son. Additionally, at the time of trial, Father had had no contact with Son in over one year, and Petitioners testified that Son is well-adjusted in their home, that Son has no relationship with Father and that he never asks about Father. The evidence in this case is both clear and convincing that termination of the parental rights of Father is in Son's best interest.

## V. CONCLUSION

For the aforementioned reasons, we affirm the termination of the parental rights of Timothy L. Wells to Son. Costs of this appeal are taxed to Appellant, Timothy L. Wells, and his surety, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.