# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 8, 2014

## IN RE: KARMA S. C.

### Direct Appeal from the Chancery Court for Knox County
### No. 181900-3     Michael W. Moyers, Chancellor

---

### No. E2013-02198-COA-R3-PT-FILED-MARCH 5, 2014

---

The trial court terminated Mother's parental rights on the grounds of abandonment for willful failure to visit and willful failure to support. We vacate the decision of the chancery court and we remand for further findings.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Daniel Kidd, Knoxville, Tennessee, for the appellant, Krishena Montalvo

James R. LeFevor, Knoxville, Tennessee, for the appellees, Emily Marie Graham and Henry "Shane" Graham

## OPINION

### I. Facts & Procedural History

This is a parental termination case. Jacob C. ("Father") and Krishena M. ("Mother") are the biological parents of Karma S.C., who was born on April 29, 2009. According to Mother, Mother "gave custody" of the child to her cousins in June or July of 2010, and, shortly thereafter, her cousins "signed custody" to Mother's mother ("Grandmother"). Due to Grandmother's health issues, temporary physical and legal custody of the child was transferred to non-relatives Henry "Shane" Graham and Emily Graham ("the prospective adoptive parents") on September 1, 2011, pursuant to a Knox County Juvenile Court Order. A Custody Order was entered on January 11, 2012, *nunc pro tunc* to September 1, 2011, awarding legal and physical custody to the Grahams and, among other things, allowing Mother supervised visitation with the child.

On December 20, 2011, the Grahams filed a Petition for Adoption ("Petition") in the Knox County Chancery Court seeking to terminate the parental rights of Father[1] and Mother and to adopt the child. In their Petition, the Grahams alleged the following in support of parental termination:

(a) Defendants Krishena Montalvo and Jacob Chosie last visited the child . . . more than a year ago.
(b) For a period in excess of four consecutive months immediately preceding the filing of this petition, Defendants Krishena Montalvo and Jacob Chosie have willfully failed to visit the child.
(c) For a period since the birth, Krishena Montalvo and Jacob Chosie have failed to provide meaningful support, despite being employed and/or capable of paying support.
(d) Continued contact with Krishena Montalvo and Jacob Chosie is a danger to the health and welfare of the child.
(e) Only token visits and steps to visit [the child] have taken place by Krishena Montalvo and Jacob Chosie.
(f) Only token support for [the child] was paid by Krishena Montalvo and Jacob Chosie over the lifetime of the child.
(g) Krishena Montalvo and Jacob Chosie failed to make reasonable payments to support the child under the circumstances of employment and earnings.

---

[1]A default judgment was entered against Father and the termination of his parental rights is not at issue on appeal.

Mother filed a letter stating her "disagreement" with the Petition and indicating that she was served with the Petition while incarcerated in the Knox County Jail on January 24, 2012.

A trial was held on the prospective adoptive parents' Petition on July 11, 2012.[2] Thereafter, the trial court entered orders[3] which, among other things, terminated Mother's parental rights to the child. Specifically, the trial court found that Mother had abandoned the child by willfully failing to support and willfully failing to visit during the four-month period preceding the Petition and that termination was in the child's best interest. Mother timely appealed.[4]

## II. ISSUES PRESENTED

Mothers presents the following issues for review, as summarized and restated:

1.    Whether the trial court, in considering abandonment, looked to the wrong four-month period;

2.    Whether the trial court erred in finding abandonment for failure to visit;

3.    Whether the trial court erred in finding abandonment for failure to support; and

4.    Whether Mother received notice pursuant to Tennessee Code Annotated section 36-1-113(f).

For the following reasons, we vacate the decision of the chancery court and we remand for further findings.

---

[2]A trial transcript is included in the record before us.

[3]The trial court entered its initial "Order Terminating Parental Rights" on August 1, 2013. An "Amended Order Terminating Parental Rights" and a "Second Amended Order Terminating Parental Rights" were entered on October 10, 2013 and October 29, 2013, respectively. The orders incorporated the trial court's oral ruling from the bench.

[4]The Second Amended Order Terminating Parental Rights was made final pursuant to Rule 54.02.

### III. STANDARD OF REVIEW

"A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the Due Process Clause of the federal and state constitutions." *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007); *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005). Although the parent's right is fundamental and superior to the claims of other persons and the government, it is not absolute. *In re J.C.D.*, 254 S.W.3d at 437. A parent's right "continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *Id.*; *see also In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In Tennessee, proceedings to terminate a parent's parental rights are governed by statute. "Parties who have standing to seek the termination of a biological parent's parental rights must prove two things." *In re Audrey S.*, 182 S.W.3d at 860; *see also In re M.J.B.*, 140 S.W.3d at 653. First, they must prove the existence of at least one of the statutory grounds for termination, which are listed in Tennessee Code Annotated section 36-1-113(g). *Id.* Several grounds for termination are listed in subsection (g), but the existence of any one of the grounds enumerated in the statute will support a decision to terminate parental rights. *In re S.R.C.*, 156 S.W.3d 26, 28 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). Second, the petitioner must prove that terminating parental rights is in the child's best interest, considering, among other things, the factors listed in Tennessee Code Annotated section 36-1-113(I). *In re Audrey S.*, 182 S.W.3d at 860. Because no civil action carries graver consequences than a petition to sever family ties forever, both of the elements for termination must be proven by clear and convincing evidence. *Id.* at 860-61. In sum, "[t]o terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006) (citing *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). Clear and convincing evidence has been defined as evidence that "eliminates any serious or substantial doubt concerning the correctness of the conclusion to be drawn from the evidence." *In re L.J.C.*, 124 S.W.3d 609, 619 (Tenn. Ct. App. 2003) (quoting *In the Matter of: C.D.B., S.S.B., & S.E.B.*, 37 S.W.3d 925, 927 (Tenn. Ct. App. 2000)). It produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Audrey S.*, 182 S.W.3d at 861.

Because of this heightened burden of proof in parental termination cases, on appeal we must adapt our customary standard of review as set forth in Tennessee Rule of Appellate Procedure 13(d). *In re Audrey S.*, 182 S.W.3d at 861. First, we review each of the trial court's specific factual findings *de novo* in accordance with Rule 13(d), presuming the

finding to be correct unless the evidence preponderates against it. *Id.* Second, we must determine whether the facts (either as found by the trial court or as supported by the preponderance of the evidence) clearly and convincingly establish the elements required to terminate parental rights. *Id.* Whether a statutory ground has been proven by the requisite standard of evidence is a question of law to be reviewed *de novo* with no presumption of correctness. ***In re R.L.F.***, 278 S.W.3d 305, 312 (Tenn. Ct. App. 2008) (citing *In re B.T.*, No. M2007-01607-COA-R3-PT, 2008 WL 276012, at *2 (Tenn. Ct. App. Jan. 31, 2008)).

## IV. DISCUSSION

### *A. Notice*

We first address Mother's argument that she was not given the requisite notice outlined in Tennessee Code Annotated section 36-1-113(f), which provides:

(f) Before terminating the rights of any parent or guardian who is incarcerated or who was incarcerated at the time of [sic] an action or proceeding is initiated, it must be affirmatively shown to the court that such incarcerated parent or guardian received actual notice of the following:

(1) The time and place of the hearing to terminate parental rights;

(2) That the hearing will determine whether the rights of the incarcerated parent or guardian should be terminated;

(3) That the incarcerated parent or guardian has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent or guardian should be terminated, and, at the discretion of the court, such participation may be achieved through personal appearance, teleconference, telecommunication or other means deemed by the court to be appropriate under the circumstances;

(4) That if the incarcerated parent or guardian wishes to participate in the hearing and contest the allegation, such parent or guardian:

(A) If indigent, will be provided with a court-appointed attorney to assist the parent or guardian in contesting the allegation; and

(B) Shall have the right to perpetuate such person's testimony or that of any witness by means of depositions or interrogatories as provided by the Tennessee Rules of Civil Procedure; and

(5) If, by means of a signed waiver, the court determines that the incarcerated

parent or guardian has voluntarily waived the right to participate in the hearing and contest the allegation, or if such parent or guardian takes no action after receiving notice of such rights, the court may proceed with such action without the parent's or guardian's participation.

According to Mother's letter response to the prospective adoptive parents' December 20, 2011 Petition, Mother was incarcerated on January 24, 2012, when she was served with the Petition. At trial, Mother was asked how long she had been incarcerated when she was served with the Petition. She responded, "I know I was there for almost two and-a-half months maybe, two months." It appears that Mother was incarcerated when the Petition was filed and, therefore, that she was owed the statutory notice for incarcerated persons. However, we find the lack of notice issue is waived because Mother failed to raise it in the trial court.[5] *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006). Moreover, we note that Mother personally appeared at the termination hearing, that she testified at the termination hearing, and that counsel was appointed who represented her at the hearing.

### B. Abandonment

The first ground for termination listed in the statute, and the one most frequently relied upon, is abandonment. *In re Audrey S.*, 182 S.W.3d at 862. For purposes of terminating parental rights, there are five alternative definitions of abandonment listed in Tennessee Code Annotated section 36-1-102(1)(A)(I)-(v). Those definitions include:

(I) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child; [or]

. . . .

(iv) A parent . . . is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months

---

[5]We note that, in the trial court, Mother challenged only a lack of notice as it related to the prospective adoptive parents taking custody of the child without her knowledge.

immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's . . . incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

Abandonment can be established by showing that a parent either willfully failed to visit or willfully failed to provide support. *See In re Audrey S.*, 182 S.W.3d at 863 ("In the statutes governing the termination of parental rights . . . . [w]illful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent.") (citations omitted). "Failure to visit or support a child is 'willful' when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *Id.* at 864 (footnote and citations omitted). "Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law." *In re Mark A.L.*, No. M2013-00737-COA-R3-PT, 2013 WL 5536801, at *3 (Tenn. Ct. App. Oct. 4, 2013) (citing *In re Adoption of Angela* E., 402 S.W.3d 636, 639 (Tenn. 2013)).

Relevant Four-Month Period

On appeal, Mother claims that she was incarcerated at some point during the four-month period preceding the filing of the Petition. Therefore, she contends that the definition of abandonment set forth in Tennessee Code Annotated section 36-1-102(1)(A)(iv) applies and, thus, that the trial court erred in utilizing the definition for non-incarcerated parents set out in numeral (i). She maintains, however, that section 36–1-102(1)(A)(iv) cannot now be relied upon to terminate her parental rights because it was not pled in the prospective adoptive parents' Petition. Alternatively, she contends that if abandonment during the four-month period preceding incarceration was pled, "there can be no clear and convincing evidence of that abandonment because the specific four months were never established."

In response to Mother's arguments on appeal, the prospective adoptive parents concede that "there is no clear evidence when [Mother] was confined." However, they contend that "it does not matter when the four-month period starts" because, according to the prospective adoptive parents, Mother did not support or visit the child during the four months preceding Mother's purported incarceration in November 2011.

As stated above, the trial court terminated Mother's parental rights on the grounds of abandonment for willful failure to visit and willful failure to support. A review of the record clearly indicates that the trial court utilized the definition set forth in section 36-1-

102(1)(A)(I) and it focused solely upon the four-month period preceding the filing of the Petition–August 20, 2011 to December 20, 2011. For example, in its Second Amended Order Terminating Parental Rights, the trial court "found by clear and convincing evidence that there were no support payments made for the child during the four months *preceding the filing of the adoption[,]*" and it "found by clear and convincing evidence that the Mother had not visited with the child during the four months *preceding the filing of the petition for adoption*." (emphasis added).

If a parent is incarcerated when a termination action is commenced or if a parent is incarcerated during the four-month period preceding such commencement, the court, in considering abandonment, must look to the parent's visitation and support during the four-month period *preceding incarceration* rather than to the four-month period *preceding the petition*. *See* **Tenn. Code Ann. § 36-1-113(f)**. Consideration of the pre-incarceration period "recognizes that an incarcerated parent has limited opportunities to visit or to earn money with which to pay support, making it difficult to show that such failures were willful." *In re W.B., IV*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at \*9 (Tenn. Ct. App. Apr. 29, 2005) (citing *In re Adoption of Copeland*, 43 S.W.3d 483, 488-89 (Tenn. Ct. App. 2000)).

At trial, Mother was questioned regarding her incarceration history. As explained above, Mother testified, without contradiction, that she had been incarcerated for approximately two to two and one-half months when she was served, on January 24, 2012, with the December 20, 2011 Petition. Beyond that incarceration, however, Mother could not recall specific dates of incarceration. She stated only that she had been incarcerated "several" times prior to the November to January 2011 incarceration. Unfortunately, no other evidence concerning incarceration is included in the record before us.

The trial court made no factual findings regarding incarceration and it is not apparent from the record why the trial court considered the four-month period preceding the filing of the Petition notwithstanding Mother's alleged incarceration during that period.[6] Additionally, because the trial court focused upon the four-month period preceding the filing of the Petition, it made no findings as to whether Mother willfully failed to support or willfully failed to visit the child during the four-month period preceding incarceration. These omissions necessitate a remand for findings.[7] *See id.* at \*10 (holding that a lack of findings

---

[6]We note that Mother raised the issue of the relevant four-month period in the trial court.

[7]In remanding, we reject Mother's argument that abandonment during the four-month pre-incarceration period was not sufficiently pled. The Petition did not limit the abandonment allegation to a

(continued...)

regarding the correct four-month period would necessitate remand) (footnote and citations omitted). On remand, the trial court should first determine whether Mother was incarcerated during the four-month period preceding the filing of the Petition. If so, it should then ascertain the first four-month period of non-incarceration preceding the filing of the Petition, and it should prepare findings regarding whether Mother willfully failed to visit and/or support the child during this period.[8]

## IV. CONCLUSION

For the aforementioned reasons, we vacate the decision of the chancery court and we remand for further findings. Costs of this appeal are taxed to Appellees, Emily Graham and Henry "Shane" Graham, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[7](...continued)
specifically-cited definition of the term, and it alleged abandonment during periods preceding the four-month-pre-Petition-period. For example, the Petition alleged that Mother "last visited the child . . . more than a year ago[,]" and that "[f]or a period since the birth, [Mother] ha[d] failed to provide meaningful support, despite being employed and/or capable of paying support."

[8]Subsection (iv) also provides that abandonment can be found when an incarcerated parent "has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]" Such conduct was not alleged in the trial court, nor is it raised on appeal. **Tenn. Code Ann. § 36-1-102(iv)**.