# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 11, 2015 Session

## IN RE: CHRISTOPHER M.

**Direct Appeal from the Chancery Court for Madison County**
**No. 69375     James F. Butler, Judge**

---

**No. W2014-02520-COA-R3-PT – Filed August 24, 2015**

---

This appeal involves the termination of a mother's parental rights to her eleven-year-old son. In 2004, the son was adjudicated dependent and neglected due to his mother's substance abuse and was placed in the custody of his maternal grandmother and step-grandfather. In 2012, these same grandparents filed a petition, as prospective adoptive parents, seeking to terminate the mother's parental rights on the statutory ground of persistent conditions. The trial court found that the ground of persistent conditions had not been proven by clear and convincing evidence. The grandparents appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

David Wayne Camp, Jackson, Tennessee, for the appellants, Douglas E. H. and Rechelle Ann H.

Kortney Deniece Simmons, Jackson, Tennessee, for the appellee, Chastity A. M.

## OPINION

### I.     FACTS & PROCEDURAL HISTORY

Christopher M.[1] ("Christopher") was born to Chastity M. ("Mother") in July 2003.

---

[1]In cases involving a minor child, it is this Court's policy to redact names in order to protect the child's identity. In this case, in order to preserve both clarity and the anonymity of the child, we will redact the names of individuals sharing the child's surname and will refer to those individuals by their given name and the first letter of their surname.

Around September 2003, Mother signed a Power of Attorney, giving the care and physical custody of Christopher to his grandmother. After Mother terminated the Power of Attorney and regained physical custody of Christopher, the Tennessee Department of Children's Services ("DCS") filed a petition to adjudicate Christopher dependent and neglected and for a change of custody to his maternal grandparents ("Grandparents"). In November 2004, the Madison County Juvenile Court entered an order finding Christopher dependent and neglected, due to the fact that Mother tested positive for methamphetamine, and her admission that she had been using illegal drugs even though she was pregnant with a second child. Christopher was then placed with his maternal Grandparents, with whom he has lived since that time.

Mother gave birth to another son ("Brother") in 2005. Due to Mother's continued drug use, Brother was removed from Mother's home and lived with Mother's sister for a time and then with the Grandparents. Grandparents eventually relinquished custody of Brother to DCS because of emotional and behavioral problems. Mother moved numerous times over the next several years, living in Tennessee, Mississippi, and Wisconsin. In December 2013, DCS approved Brother's return to Mother's home in Tennessee.

In July 2012, Grandparents filed a petition to terminate Mother's parental rights to Christopher and for adoption in the Madison County Chancery Court. Grandparents asserted that statutory grounds for termination existed due to abandonment, Tenn. Code Ann. § 36-1-113(g)(1), and persistent conditions, Tenn. Code Ann. § 36-1-113(g)(3). They also asserted that termination of Mother's parental rights was in Christopher's best interest. The chancery court appointed a guardian ad litem and appointed counsel for Mother.

After a hearing only on the issue of abandonment, in which the proof was clear that Mother had regular visits with the child and had regularly paid child support, the chancery court issued a letter ruling, and an Order was entered dismissing the case. Grandparents then filed a Rule 59 Motion, which the chancery court partially granted, vacating a portion of the prior order, as it had failed to consider the grounds of "persistent conditions" in its prior dismissal Order. The chancery court conducted a bench trial on June 27, 2014, July 7, 2014, and August 8, 2014. During the trial, the court heard testimony from Mother's girlfriend, Mother's sister, Grandparents, Christopher's psychologist, and the DCS worker assigned to evaluate Mother's home in connection with Brother's case.

For reasons that will be discussed below, the trial judge found that the ground of persistent conditions had not been established by clear and convincing evidence. Consequently, the trial court entered an order dismissing the Grandparents' petition for

termination of parental rights and adoption.

## II.  ISSUES PRESENTED

Grandparents have timely filed their notice of appeal and present the following issue for review:

> 1.  Whether the trial court erred when it found no clear and convincing evidence as to the ground of persistent conditions.

For the following reasons, we affirm the decision of the chancery court.

## III.  STANDARD OF REVIEW

"A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the due process clauses of the federal and state constitutions." *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007); *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005). Although the parent's right is fundamental and superior to the claims of other persons and the government, it is not absolute. *In re J.C.D.*, 254 S.W.3d at 437. A parent's right "continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *Id.*; *see also In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In Tennessee, proceedings to terminate parental rights are governed by statute. "Parties who have standing to seek the termination of a biological parent's parental rights must prove two things." *In re Audrey S.*, 182 S.W.3d at 860; *see also In re M.J.B.*, 140 S.W.3d at 653. First, they must prove the existence of at least one of the statutory grounds for termination, which are listed in Tennessee Code Annotated section 36-1-113(g). *Id.* Several grounds for termination are listed in subsection (g), but the existence of any one of the grounds enumerated in the statute will support a decision to terminate parental rights. *In re Angela E.*, 303 S.W.3d 240, 251 (Tenn. 2010); *In re S.R.C.*, 156 S.W.3d 26, 28 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). Second, the petitioner must prove that terminating parental rights is in the child's best interest, considering, among other things, the factors listed in Tennessee Code Annotated section 36-1-113(i). *In re Audrey S.*, 182 S.W.3d at 860. In light of the constitutional dimension of the rights at stake in a termination proceeding, the person seeking to terminate these rights must prove all the elements of the case by clear and convincing evidence. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808-09 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). In sum, in order to terminate

parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Adoption of Angela E.*, 402 S.W.3d 636, 639 (Tenn. 2013); *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). "Clear and convincing evidence" has been defined as "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Valentine*, 79 S.W.3d 532, 546 (Tenn. 2002)). It produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Audrey S.*, 182 S.W.3d at 861.

Because of this heightened burden of proof in parental termination cases, on appeal we must adapt our customary standard of review as set forth in Tennessee Rule of Appellate Procedure 13(d). *In re Audrey S.*, 182 S.W.3d at 861. First, we review each of the trial court's specific factual findings *de novo* in accordance with Rule 13(d), presuming the finding to be correct unless the evidence preponderates against it. *In re Adoption of Angela E.*, 402 S.W.3d at 639. Second, we must determine whether the facts (either as found by the trial court or as supported by the preponderance of the evidence) amount to clear and convincing evidence that one of the statutory grounds for termination exists. *Id.* at 639-40. Whether a statutory ground has been proven by the requisite standard of evidence is a question of law to be reviewed *de novo* with no presumption of correctness. *In re R.L.F.*, 278 S.W.3d 305, 312 (Tenn. Ct. App. 2008) (citing *In re B.T.*, No. M2007-01607-COA-R3-PT, 2008 WL 276012, at *2 (Tenn. Ct. App. Jan. 31, 2008)).

## IV. DISCUSSION

### A.     *Persistent Conditions*

This case involves the statutory ground for termination that is commonly referred to as "persistent conditions," defined in Tennessee Code Annotated section 36-1-113(g)(3) as existing when:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (A)     The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (B)     There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> (C)          The continuation of the parent or guardian and child

> relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3) (2010 & Supp. 2013). In order to terminate parental rights, there must be clear and convincing evidence of each of these elements. *In re Valentine*, 79 S.W.3d at 550. The purpose behind the "persistent conditions" ground for terminating parental rights is "'to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child.'" *In re Dakota C.R.*, 404 S.W.3d 484, 499 (Tenn. Ct. App. 2012) (quoting *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008)). In cases involving this ground, it is not necessary to prove that a parent-child relationship cannot be salvaged, nor is it necessary to show that a parent is "currently harmful" to a child's safety or future emotional stability. *In re K.A.H.*, No. M1999-02079-COA-R3-CV, 2000 WL 1006959, at *5 (Tenn. Ct. App. July 21, 2000).

The statutes governing termination of parental rights recognize a child's need for a permanent, stable environment. *Id.* Accordingly, the question is the likelihood that the child can be safely returned to the custody of the parent, not whether the child can safely remain in foster care with periodic visits with the parent. *Id.*

Here, the record reflects that Christopher was removed from his mother's home by order of a court for a period of six months. In fact, by the time of trial, Christopher had been in the custody of Grandparents for over nine years. Therefore, the determinative issues are whether the conditions that led to removal (or other conditions that would cause further abuse or neglect and prevent the child's safe return) still persist; whether there is a likelihood that these conditions will be remedied at an early date so that the child can be safely returned to Mother "in the near future"; and whether continuation of the parent-child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home. *See* Tenn. Code Ann. § 36-1-113(g)(3).

The condition that led to Christopher's removal from Mother's home was illegal drug abuse. Mother admitted that Christopher was removed from her custody in 2004 due to her drug abuse problem and that she was in "no condition to have him" while she was addicted to drugs. After failing to complete a rehabilitation program several times, Mother decided to quit using drugs "cold turkey." At trial in 2014, Mother testified that she had not used drugs since 2010. In addition, Mother submitted a November 27, 2013 negative hair follicle drug test that was admitted into evidence.

Mother's sister testified that she visited Mother's home recently "on three separate weekends" and that she believes Mother is "clean." Grandparents also testified that they

have no actual knowledge of Mother's activities but do not believe she continues to use illegal drugs.

The trial court also heard evidence regarding the portion of section 36-1-113(g)(3) addressing "other conditions which would probably cause the child to be subjected to further abuse, or neglect…." Grandparents alleged that Mother abused alcohol in the home, that Mother's girlfriend physically abused Mother, and that Christopher's younger brother physically abused him. At trial, Grandparents testified that Christopher began wetting the bed and exhibiting behavioral difficulties after spending weekends with Mother. However, the testimony of both Grandparents indicates that they had little to no contact with Mother during the several years prior to trial and no actual knowledge regarding Mother's alcohol use or whether any violence had occurred in Mother's home. Dr. Pickering, Christopher's psychologist, relayed much of the proof regarding these allegations at trial but acknowledged he had never spoken with Mother about his sessions with Christopher and conceded that he elicited information from Christopher by having him confirm reports given to him by Grandmother. However, Dr. Pickering also testified that Christopher loves his mother and wants to live with her.

When questioned regarding violence in her home, Mother testified "There's no violence in my home at all," though she later described events in which Christopher struck Brother with a NERF gun after Brother had punched him. She later clarified that Christopher would be in no danger in her home and that "[the brothers] ain't going to do nothing that two brothers ain't going to do. They're going to argue, fuss, and fight." Mother's sister said that Mother's home was "chaotic" and that the "boys run [her] house" but also testified that she had never seen anyone use violence towards Christopher. The DCS worker assigned to evaluate Mother's home with respect to Brother testified that he visited Mother's home at random times for over a year prior to trial. He testified that he never saw Mother impaired, that he had no concerns with Mother's parenting skills, and that the conditions that caused removal, as he understood them, had been remedied.

On appeal, Grandparents challenge the trial court's finding that their burden of proving persistent conditions by clear and convincing evidence had not been met. First, they assert that the trial court erred in finding that Mother's alcohol use does not affect her parenting. Second, they assert that the trial court erred by reaching a conclusion regarding instability and violence at Mother's home that "was not supported by the testimony or the exhibits admitted into evidence." The trial court made extensive findings with regard to both the original conditions for removal and other conditions relevant to the ground of persistent conditions, describing Mother's alcohol use, and the general stability of Mother's home. The court then concluded:

The conditions that caused the removal of [Christopher] from the Mother do not still exist and did not exist at the time of the filing of the Petition by [Grandparents], or at the time of trial. The other conditions relied upon and alleged were not proven to still exist at the time of filing, or at the time of trial by clear and convincing evidence. Since the Plaintiffs are unable to carry the heavy burden of proof of grounds for termination of Mother's parental rights, there is no occasion to inquire into [Christopher's] best interest. Suffice [it] to say that [Christopher], by both [Grandparents'] and other witnesses' testimony, loves Mother and wants to live with her. DCS has approved her home for her other child and that other child lives with her currently. DCS has no issues with Mother's parenting skills, or her living circumstances.

We agree with the trial court's conclusions. Christopher was removed from Mother's home due to illegal drug use, which has since been remedied. We agree with the trial court's finding that "[t]here is no proof to the contrary." The Grandfather testified that he believes Mother has changed based on his belief that "[s]he doesn't do drugs anymore." Although the Grandfather alleged that Mother had failed several drug tests, the trial court noted that "[t]he only drug test the Court has evidence of failure is the one in 2004."

Grandparents insist that Mother's continued use of alcohol constitutes a persistent condition within the meaning of section 36-1-113(g)(3)(A) because it was either a condition that led to Christopher's removal or alternatively it falls into the "other conditions" category. We disagree. The juvenile court's 2004 order plainly states that the cause for removal was a positive test for methamphetamine and for the use of "illegal drugs." Alcohol use was not contemplated by the juvenile court in its order, nor will we read that into it here. Although Mother testified at trial to drinking as many as eighteen beers per week, the trial court noted that:

> By her own admission she still uses alcohol, but that is not illegal, and does not [a]ffect on her parenting or employment according to the DCS worker who monitored her routinely and personally. Other testimony about Mother's drinking habits [was] hearsay and [was] not clear and convincing to the Court.

The record does not provide evidence that "produces a firm belief or conviction" in our mind that Mother's use of alcohol is a condition which would "probably cause [Christopher] to be subjected to further abuse or neglect…." *See* Tenn. Code Ann. Section 36-1-113(g)(3)(A); *see also In re Audrey S.*, 182 S.W.3d at 861.

We also agree with the trial court's conclusion that "[a]llegations of Mother's failure to maintain a stable home were based on hearsay and speculation." While Grandparents' allegations of repeated episodes of domestic violence, among other things, cause concern, the record simply does not provide clear and convincing evidence of their truth. Grandparents and Dr. Pickering, the parties who either made or offered proof regarding the allegations, admitted that they had no personal knowledge of the alleged facts. This, combined with conflicting testimony by those with personal knowledge, raises "substantial doubt" as to the truth of those allegations. *See In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Valentine*, 79 S.W.3d 532, 546 (Tenn. 2002)).

In sum, we cannot disagree with the trial court that there was no clear and convincing evidence that "[t]he conditions that led to [Christopher's] removal or other conditions…that, therefore, prevent the child's safe return to the care of the [Mother] still persist." *See* Tenn. Code Ann. § 36-1-113(g)(3). Because a ground for termination has not been established, we do not consider Grandparents' argument regarding the child's best interest.

## V. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded. Costs of this appeal are taxed to the appellants, Douglas E. H. and Rechelle Ann H., and their surety, for which execution may issue, if necessary.

_____
BRANDON O. GIBSON, JUDGE

8