IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 1, 2024

# IN RE KEIGEN D.

**Appeal from the Circuit Court for Macon County**
**No. 2023-CV-45     Michael Wayne Collins, Judge**

_____

### No. M2023-01555-COA-R3-PT

_____

Father appeals the termination of his parental rights based on abandonment and failure to manifest a willingness and ability to parent. After our review, we affirm the termination of Father's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and JEFFREY USMAN, JJ., joined.

Randall Kirby, Sparta, Tennessee, for the appellant, Ted D.

Kara Bellar, Carthage, Tennessee, for the appellees, Benjamin H. and Chelsea H.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

The minor child at issue was born in September 2012 to unmarried parents, Petitioner/Appellee Chelsea H. ("Mother") and Respondent/Appellant Ted D. ("Father").[1] Mother and Father separated when the child was eighteen months old. Mother married Petitioner/Appellee Benjamin H. ("Stepfather," and together with Mother, "Petitioners") in 2016. On April 20, 2023, Petitioners filed a petition to terminate Father's parental rights and for adoption in the Macon County Circuit Court ("the trial court"). The petition alleged as grounds for termination various types of abandonment, as well as failure to manifest an ability and willingness to parent the child.

_____

[1] In cases involving termination of parental rights, it is this Court's policy to remove the full names of children and other parties to protect their identities.

A final hearing on the petition was heard on October 4, 2023. Father did not appear for the hearing, despite having notice of the hearing date.[2] At the start of the hearing, the parties agreed to introduce various documents related to Father's criminal history, which showed the following judgments and sentences:

- A May 26, 2019 conviction for aggravated criminal trespassing, in which Father was sentenced to eleven months, twenty-nine days incarceration, suspended.
- An October 16, 2019 judgment for possession of a Schedule II drug (methamphetamine), in which Father was sentenced to eleven months, twenty-nine days incarceration, suspended to thirty days.
- An October 16, 2019 judgment for violation of probation after testing positive for methamphetamine, amphetamines, and MDMA, in which Father was sentenced to ninety days incarceration.
- A January 12, 2021 judgment for violation of probation for testing positive for methamphetamine, amphetamines, opiates and oxycodone, in which Father was sentenced to eleven months, twenty-nine days incarceration.
- An April 6, 2022 conviction for possession of a Schedule II drug (methamphetamine), in which Father was sentenced to eleven months, twenty-nine days incarceration, suspended to thirty days.
- An April 6, 2022 conviction for theft, in which Father was sentenced to eleven months, twenty-nine days incarceration, suspended.
- A February 7, 2023 judgment for violation of probation for testing positive for methamphetamine, amphetamines, opiates, fentanyl, MDMA, and buprenorphine in which Father was sentenced to eleven months, twenty-nine days incarceration.

Only Mother and Stepfather testified, with the bulk of the proof being introduced through Mother. Mother essentially testified that Father was not a parent to her child, who was eleven years old at the time of trial. According to Mother, Father has paid no support of any kind for the child since she was eighteen months old. In fact, despite twice offering to provide gifts for the child, the last time at her fifth birthday, Father never did so.

After the parties' separation, Father saw the child only sporadically for ten to fifteen minutes at a time; Mother testified that even these short visits occurred less than twenty times in between the separation and when the child turned five years old; sometimes Father did not visit with the child for months at a time.

---

[2] Father was in a rehabilitation program at the time of the hearing. As his appointed counsel explained at the start of the hearing, however,

> My client was at the last court date when we set this for this county. I instructed him where to come. I showed him where it was. The only contact I've had with him since then is an email this morning and it was actually from a gentleman there at the rehab halfway house that he is at stating that they didn't have the address for today. I got that at 7:30 and I didn't realize I got that until I got here. I sent that address. I haven't heard anything back.

The child's fifth birthday, however, was a turning point for Father. Father attended the child's birthday party hours late and without the gift he promised the child. And following this visit, Father thereafter made no effort to reach out for any visitation whatsoever and no visitation of any kind occurred. As a result, by the time of the termination trial, Father had not seen, spoken to, or written the child in approximately six years.

According to Mother, she never denied a single visitation that was requested by Father or placed any restrictions on his visitation. Mother also testified that she never changed her phone number, and that maternal grandmother still lived in the same location where visits historically took place. In fact, Mother testified that Father would sometimes play basketball at a park across the street from maternal grandmother's home and never sought out the child even when she was "literally outside playing" in front of him. Father would also "put his hood up over his head and walk the other direction to avoid" Mother and the child when he saw them in public.

As result of the lack of contact, the child has no relationship with Father. In fact, she did not know that Stepfather was not her biological parent until she was eight years old and told by children at school that her father was in the local newspaper for being arrested. The child returned home from school very upset that Stepfather had been arrested, and Petitioners had to explain to her about her biological parent. Since that conversation, the child has expressed a desire to share the last name of Petitioners and their other children. The child is bonded to Stepfather, her half-sister, and her stepbrother, and "she just wants to feel . . . whole as a family" with them.

Mother testified that Father is currently in a rehabilitation facility, but that due to his criminal activity and drug use in the past, she has concerns about the safety of his home and his ability to parent the child. Mother also asserted that even if Father is doing well in rehabilitation, he would need time outside the facility to see if his positive improvements would continue. Mother also testified that the child would be fearful of living in Father's home.[3]

The trial court entered its order terminating Father's parental rights on October 6, 2023. Therein, the trial court found that Father had both abandoned the child and failed to manifest a willingness and ability to parent the child, and that termination was in the child's best interests. Father filed a notice of appeal to this Court on November 3, 2023.

## II. STANDARD OF REVIEW

Parental rights are "among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state

---

[3] Mother noted, however, that to her knowledge, Father currently had no home.

- 3 -

constitutions." ***In re Carrington H.***, 483 S.W.3d 507, 521 (Tenn. 2016) (collecting cases). Therefore, "parents are constitutionally entitled to fundamentally fair procedures in parental termination proceedings." ***Id.*** at 511. These procedures include "a heightened standard of proof—clear and convincing evidence." ***Id.*** at 522 (quotation marks and citations omitted). "Clear and convincing evidence is evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." ***In re Valentine***, 79 S.W.3d 539, 546 (Tenn. 2002) (quotation marks and citation omitted).

In Tennessee, termination of parental rights is governed by statute, which identifies "situations in which [the] state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." ***In re Jacobe M.J.***, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting ***In re W.B.***, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))). Thus, a party seeking to terminate a parent's rights must prove by clear and convincing evidence (1) the existence of at least one of the statutory grounds in section 36-1-113(g), and (2) that termination is in the child's best interest. *See **In re Valentine***, 79 S.W.3d at 546. "Considering the fundamental nature of a parent's rights, and the serious consequences that stem from termination of those rights, a higher standard of proof is required in determining termination cases." ***In re Addalyne S.***, 556 S.W.3d 774, 782 (Tenn. Ct. App. 2018). The clear and convincing evidence standard applicable here is "more exacting than the 'preponderance of the evidence' standard, although it does not demand the certainty required by the 'beyond a reasonable doubt' standard. To be clear and convincing, the evidence must eliminate any substantial doubt and produce in the fact-finder's mind a firm conviction as to the truth." ***In re S.R.C.***, 156 S.W.3d 26, 29 (Tenn. Ct. App. 2004) (internal citation omitted).

Because of the high standard of proof in termination cases, the standard of review is somewhat different than our typical standard under Rule 13 of the Tennessee Rules of Appellate Procedure. As the Tennessee Supreme Court recently explained:

> To review trial court decisions, appellate courts use a . . . two-step process, to accommodate both Rule 13(d) of the Tennessee Rules of Appellate Procedure and the statutory clear and convincing standard. First, appellate courts review each of the trial court's specific factual findings de novo under Rule 13(d), presuming each finding to be correct unless the evidence preponderates against it. ***In re Taylor B.W.***, 397 S.W.3d 105, 112 (Tenn. 2013); ***In re Justice A.F.***, [No. W2011-02520-COA-R3-PT,] 2012 WL 4340709, at *7 [(Tenn. Ct. App. Sept. 24, 2012)]. When a trial court's factual finding is based on its assessment of a witness's credibility, appellate courts afford great weight to that determination and will not reverse it absent clear evidence to the contrary. ***Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn. 2002); ***In re Justice A.F.***, 2012 WL 4340709, at *7 (citing ***In re M.L.D.***, 182

S.W.3d 890, 894 (Tenn. Ct. App. 2005)).

Second, appellate courts determine whether the combination of all of the individual underlying facts, in the aggregate, constitutes clear and convincing evidence. *In re Taylor B.W.*, 397 S.W.3d at 112; *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re Justice A.F.*, 2012 WL 4340709, at \*7. Whether the aggregate of the individual facts, either as found by the trial court or supported by a preponderance of the evidence, amounts to clear and convincing evidence is a question of law, subject to de novo review with no presumption of correctness. *See In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *see also In re Samaria S.*, 347 S.W.3d 188, 200 (Tenn. Ct. App. 2011). As usual, the appellate court reviews all other conclusions of law de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d [240,] 246 [Tenn. 2010)].

*In re Markus E.*, 671 S.W.3d 437, 457 (Tenn. 2023).

### III. ANALYSIS

This appeal involves two issues: whether the trial court erred in finding clear and convincing evidence of grounds to terminate Father's parental rights; and, if so, whether termination of Father's parental rights is in the child's best interests. We begin with the grounds for termination.

### A. Grounds

### 1. Abandonment

Parental rights may be terminated when "[a]bandonment by the parent or guardian, as defined in § 36-1-102, has occurred[.]" Tenn. Code Ann. § 36-1-113(g)(1). Although there is no dispute that Petitioners alleged abandonment against Father, there is some dispute as to which forms of abandonment the trial court found. As relevant here, Tennessee Code Annotated section 36-1-102 defines abandonment as,

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child;

. . . .

(iv) A parent or guardian is incarcerated at the time of the filing of a proceeding, pleading, petition, or amended petition to terminate the parental

rights of the parent or guardian of the child who is the subject of the petition for termination of parental rights or adoption, or a parent or guardian has been incarcerated during all or part of the four (4) consecutive months immediately preceding the filing of the action and has:

(a) Failed to visit, has failed to support, or has failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding the parent's or guardian's incarceration;

. . . .

(c) With knowledge of the existence of the born or unborn child, engaged in conduct prior to, during, or after incarceration that exhibits a wanton disregard for the welfare of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A).[4]

Father asserts that the trial court erred by finding abandonment under section 36-1-102(1)(A)(i) because there is no dispute that Father was incarcerated at the time the petition was filed. As such, Father contends that the definition under subsection (iv), rather than subsection (i), is applicable. At trial, Petitioners made clear that they had alleged subsections (i) and (iv) as alternatives. Moreover, the trial court's order, while somewhat unclear on this issue, focuses on Father's failure to pay support and visit the child during the four months preceding his incarceration. As such, we need not tax the length of this Opinion with further consideration of subsection (i) and confine our review only to those definitions under subsection (iv).[5]

**a.**

We begin with the question of whether Father failed to visit in the four consecutive months preceding his incarceration. Tenn. Code Ann. § 36-1-102(1)(A)(iv)(a). The trial court found, and Father concedes in his brief, that prior to the termination petition being filed, his last period of non-incarceration lasting more than four months ended with his October 6, 2022 incarceration. As such, the critical time period in this case is June 6, 2022, to October 5, 2022.

Section 36-1-102 defines failure to visit as "the failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). Token visitation is, in turn, defined as "visitation, under the circumstances of the individual case, [that] constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish

---

[4] Throughout this Opinion, we apply the version of the relevant statutes that were in effect at the time the petition was filed.

[5] Although Father's appellate brief does not actually contest the findings of abandonment under subsection (iv) or the other ground alleged, we will nevertheless review them briefly, but thoroughly. *See In re Carrington H.*, 483 S.W.3d at 535.

minimal or insubstantial contact with the child[.]" Tenn. Code Ann. § 36-1-102(1)(C). Here, the evidence shows that Father did not visit with the child in any fashion during the relevant time frame, or indeed for the last six years of the child's life. And while Father never raised the defense of willfulness,[6] the proof further shows that Petitioners in no way prevented him from doing so. As such, there was ample proof to terminate Father's parental rights on this ground.

**b.**

We next consider whether Father failed to pay support or make reasonable payments toward the support of the child in the same time frame. Tenn. Code Ann. § 36-1-102(1)(A)(iv)(a). As the statute explains:

> "[F]ailed to support" or "failed to make reasonable payments toward such child's support" means the failure, for a period of four (4) consecutive months, to provide monetary support or the failure to provide more than token payments toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period[.]

Tenn. Code Ann. § 36-1-102(1)(D). Token support is "support, [that] under the circumstances of the individual case, is insignificant given the parent's means[.]" Tenn. Code Ann. § 36-1-102(1)(B). Here, not only does the proof clearly show that Father did not support the child during the relevant time frame, but the proof also shows that he has provided absolutely no financial support for the child for more than nine years. As such, this ground for termination is likewise affirmed.

**c.**

The trial court also found that Father had abandoned the child by engaging in conduct prior to, during, or after his incarceration that exhibited a wanton disregard for her

---

[6] The termination statute provides that

> it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

Tenn. Code Ann. § 36-1-102(1)(I). Father did not raise the defense of lack of willfulness at any stage of the trial court proceedings, so it is waived. *See, e.g.*, **In re Ashlynn H.**, No. M2020-00469-COA-R3-PT, 2021 WL 2181655, at *4 (Tenn. Ct. App. May 28, 2021) ("Father failed to plead the absence of willfulness in either of his responses to the petition to terminate parental rights. So he waived the absence of willfulness as a defense to the ground of abandonment by failure to support.").

welfare. Tenn. Code Ann. § 36-1-102(1)(A)(iv)(c). We agree.

Although the statute does not specifically define "wanton disregard," Tennessee courts have held that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d 838, 867–68 (Tenn. Ct. App. 2005). Here, the record shows that throughout this child's life, Father has chosen to engage in a multitude of criminal conduct and drug abuse, resulting in violations of his probation and repeated incarcerations. Father has also failed to provide any support or supervision for the child in many years. So again, there is ample evidence of this ground for termination.

## 2. Ability and Willingness

The trial court also determined that Father failed to manifest an ability and willingness to assume custody or financial responsibility of the child under Tennessee Code Annotated section 36-1-113(g)(14). Parental rights may be terminated where:

A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

Tenn. Code Ann. § 36-1-113(g)(14). The ground contains two distinct elements that must be proven by clear and convincing evidence. The first requires proof that the parent has failed to evince **either** an ability **or** a willingness to assume custody of the child. *In re Neveah M.*, 614 S.W.3d 659, 677 (Tenn. 2020)). The second element requires proof that placing the child in the parent's custody poses "a risk of substantial harm to the physical or psychological welfare of the child." Tenn. Code Ann. § 36-1-113(g)(14).

Here, Father made no effort to parent his child in the last nine years and even when he did visit with the child, those visits lasted no more than twenty minutes each. Moreover, he has continued to engage in drug abuse and criminal conduct that has resulted in repeated incarcerations. And Father paid no child support of any kind after he and Mother separated. These facts establish that Father is neither willing nor able to care for the child, and he is also unwilling to provide her with financial support.

Moreover, the evidence was sufficient to establish the second element: that placing the child in Father's physical and legal custody would create a significant risk of harm. Here, Father has a recent history of drug abuse and criminality. Moreover, he is such a stranger to the child that she believed a story about her father was about Stepfather. And that story, about Father's criminality, caused the child emotional harm. Moreover, Father

is nothing more than a stranger to the child. *See **In re Brianna B.***, No. M2019-01757-COA-R3-PT, 2021 WL 306467, at *6 (Tenn. Ct. App. Jan. 29, 2021). So we conclude that Petitioners met their burden to establish by clear and convincing evidence of this ground for termination.

## B. Best Interest

Because we have determined that at least one statutory ground has been proven for terminating Father's parental rights, we must now decide if Petitioners have proven, by clear and convincing evidence, that termination of Father's rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); ***White v. Moody***, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). In determining the best interest of a child, the court "shall consider all relevant and child-centered factors applicable to a particular case before the court." Tenn. Code Ann. § 36-1-113(i)(1). The factors "may include, but are not limited to":

(A) The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority;

(B) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition;

(C) Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs;

(D) Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment;

(E) Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child;

(F) Whether the child is fearful of living in the parent's home;

(G) Whether the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms;

(H) Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent;

(I) Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage;

(J) Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render

the parent unable to consistently care for the child in a safe and stable manner;

(K) Whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions;

(L) Whether the department has made reasonable efforts to assist the parent in making a lasting adjustment in cases where the child is in the custody of the department;

(M) Whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest;

(N) Whether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult;

(O) Whether the parent has ever provided safe and stable care for the child or any other child;

(P) Whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive;

(Q) Whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive;

(R) Whether the physical environment of the parent's home is healthy and safe for the child;

(S) Whether the parent has consistently provided more than token financial support for the child; and

(T) Whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child.

Tenn. Code Ann. § 36-1-113(i)(1). "All factors considered by the court to be applicable to a particular case must be identified and supported by specific findings of fact in the court's written order." Tenn. Code Ann. § 36-1-113(i)(3).

The trial court found that all but five factors favored termination in this case, with the remaining factors being inapplicable. On appeal, Father disputes only two factors. First, Father finds error in the trial court's finding that he has not made a lasting adjustment of circumstances under factor (J) where the proof showed no criminal charges against him or drug use by him since October 6, 2022. And Father asserts that the trial court failed to weigh in his favor that he had been attending a drug rehabilitation program for four to five months at the time of the trial court hearing, showing that he had in fact taken advantage of available programs under factor (K).

- 10 -

Mother asserts that the trial court correctly found these factors to weigh in favor of termination, noting that the proof shows that for a significant period since October 6, 2022, Father was incarcerated or in the controlled environment of a drug rehabilitation treatment program. We have previously held that it is difficult to judge a parent's lasting adjustment of circumstances when their "sobriety has not been tested outside the controlled environment of [a] rehabilitation program[.]" *In re Zakary O.*, No. E2022-01062-COA-R3-PT, 2023 WL 5215385, at *11 (Tenn. Ct. App. Aug. 15, 2023). Moreover, the trial court specifically found that Father only enrolled in the rehabilitation program subsequent to the filing of the petition to terminate his parental rights. And often, efforts that occur well after the filing of the termination petition are "too little, too late." *Id.* at *7. So we conclude that the trial court did not err in weighing these factors in favor of terminating Father's parental rights.

Although Father has not appealed any of the trial court's findings regarding the remaining factors, we will briefly address them. *See In re Carrington H.*, 483 S.W.3d at 535. We look first to those factors related to the child's attachments. *See* Tenn. Code Ann. § 36-1-113(i)(A) (involving the effect of termination on the child's need for stability), (B) (involving the effect of a change in caretakers on the child's wellbeing), (D) (involving the security of the parent-child attachment), (E) (involving visitation), (F) (involving the child's fear of the parent's home), (H) (involving the child's attachment to another parent-figure), (I) (involving the child's relationships with others). We agree with the trial court that these factors favor termination. Simply put, Father is not a part of the child's life. He has not seen or contacted her in many years and appears to actively avoid her when he sees her in the community. Instead, the child is bonded to Stepfather and views him as her parent and her siblings as her family. Moreover, Mother testified, and the trial court found, that the child would be fearful in Father's home (to the extent that he could establish one) because he is nothing more than a stranger to her. These factors heavily weigh in favor of termination.

We next consider whether Father can meet the child's needs. *See* Tenn. Code Ann. § 36-1-113(i)(C) (involving the parent's continuity in meeting the child's needs), (M) (involving the parent's sense of urgency), (P) (involving the parent's understanding of the child's basic needs), (Q) (involving the parent's commitment to having a home that meets the child's needs), (R) (involving the health and safety of the home), (S) (involving the parent's consistent payment of more than token child support).[7] To be sure, Father has done absolutely nothing to meet the child's needs since she was less than two years old. Given Father's repeated history of drug use and incarceration, we have little confidence that Father can provide a safe and stable home for the child at any near date.

---

[7] The trial court found that factor (O), involving the parent's prior provision of safe and stable care to any child, was inapplicable because there was no proof that Father ever cared for another child, either negatively or positively. We agree that this factor is neutral. The trial court also correctly found that factor (L), regarding reasonable efforts by the Tennessee Department of Children's Services, was inapplicable because the child was not in the department's custody.

As to three factors, however, we must disagree with the trial court. Specifically, the trial court found that factor (G), involving whether the child's trauma is triggered by being in the parent's home, factor (N), involving any abuse or neglect present in the parent's home) and factor (T), involving the effect of the parent's mental and emotional fitness on the child, were inapplicable because no proof was presented as to these factors. However, a lack of proof as to an issue most often means that the factor does not favor termination. *See, e.g.*, **In re Cartier H.**, No. M2022-01576-COA-R3-PT, 2023 WL 7158076, at *14 (Tenn. Ct. App. Oct. 31, 2023) (explaining that the "failure to submit sufficient proof as to a factor does not necessarily mean that the factor is inapplicable"). So while we agree with the trial court that these factors do not favor termination, we clarify that they are not necessarily inapplicable simply due to a lack of proof.

Thus, the clear majority of the enumerated factors favor termination of Father's parental rights in this case. Father asserts, however, that the trial court failed to consider an additional factor: that he is the biological parent of the child. Respectfully, a parent's status as a child's biological parent is clearly taken into account in the context of termination of parental rights—otherwise, these serious proceedings would not be necessary. Moreover, if the last parental act that Father can cite on behalf of his child is providing the biological material for her conception, then we have little difficulty concluding that continued legal involvement with the child will not serve her best interests. Here, Father is not a parent to the child. The proof shows that even though he has had multiple opportunities to see the child, Father has actively avoided her. Even from afar, Father's criminality and drug use have hurt the child when she was subject to ridicule for his actions. The trial court's ruling that Petitioners presented clear and convincing evidence that termination of Father's parental rights was in the child's best interest is affirmed.

## IV. CONCLUSION

The judgment of the Macon County Circuit Court is affirmed, and this cause is remanded for further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant, Ted D., for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE